Maximo **SALCIDO,** by his Next Friend, Ameila **GILLILAND,** Plaintif,

v.

**WOODBURY COUNTY, IOWA;** Jessie **K. Rasmussen,** in her Official Capacity as Director of the Iowa Department of Human Services; and Thomas J. **Vilsack,** in his Official Capacity as Governor of the State of Iowa., Defendants.

No. C 98–4113–MWB.

United States District Court, N.D. Iowa, Western Division.

Sept. 16, 1999.

Frank Cal Tenuta, Legal Services Corporation of Iowa, Sioux City, Iowa, for Maximo Salcido, plaintiff.

Mary W. Vavroch, Assistant Attorney General, Diane M. Stahle, Special Assistant Attorney General, Des Moines, Iowa, for the state defendants, Governor Vilsack and Jessie K. Rasmussen.

## MEMORANDUM OPINION AND ORDER REGARDING THE STATE DEFENDANTS' MOTION TO DISMISS

BENNETT, District Judge.

### TABLE OF CONTENTS

I. INTRODUCTION ................................................. 1038

II. LEGAL ANALYSIS ............................................. 1039
 A. Eleventh Amendment Immunity ..................................... 1040
 1. General principles .......................................... 1040
 2. Suits against state officials .................................. 1041
 3. Immunity here .............................................. 1043
 a. The ADA and RA claims ................................... 1043
 b. The § 1983 claims ....................................... 1045
 B. Inadequacy Of Claims ........................................... 1046
 1. Standards for a Rule 12(b)(6) motion ......................... 1046
 2. Equal protection ............................................ 1047
 3. Preclusion of constitutional claims ........................... 1052

III. CONCLUSION ................................................. 1053

Mental disability led to the plaintiff's civil commitment to a state mental health facility, but that did not lead to his immediate admission. Instead, a dispute over who should pay for his care initially kept him out of the facility, and led him instead to federal court. The plaintiff has brought claims under the equal protection and due process clauses of the Fourteenth Amendment to the United States Constitution, the Americans with Disabilities Act (ADA), and the Rehabilitation Act (RA) against his county of legal settlement and two state officials, the governor and the director of the state department of human services, arising from the defendants' failure to place the plaintiff in the state mental health institution to which he was committed. The state defendants have moved to dismiss these claims as to them on grounds of Eleventh Amendment immuni-

ty and failure to state claims upon which relief can be granted.

## I. INTRODUCTION

According to the complaint in this matter, filed on December 18, 1998, plaintiff Maximo Salcido suffers from serious mental illnesses, including diagnoses of dementia—secondary to multiple etiologies—and a mood disorder. Although he was committed to the Clarinda Mental Health Institute (CMHI), a state mental health facility, in civil commitment proceedings over a year ago, on July 27, 1998, Salcido was barred from admission to that facility until the entry of a stipulated preliminary injunction some nine-and-a-half months later by a dispute between the defendants over whether the State of Iowa or Woodbury County should pay for Salcido's care. Woodbury County contends that it is not required to pay for Salcido's placement at CMHI, because payment for care of mentally ill persons diagnosed with dementia is excluded from the County's "single entry point" management plan for the care of the mentally ill. The County points out that its management plan was approved by the Director of the Iowa Department of Human Services, one of the "state defendants" in these proceedings.[1] The CMHI—allegedly on the authority of the other state defendant, the Governor of the State of Iowa[2]—initially refused to admit Salcido without County approval. The state defendants contend that Woodbury County, as the plaintiff's county of "legal settlement," should fund Salcido's placement at CMHI. As a result of the dispute over payment for his care, Salcido remained at Marian Health Center in Sioux City, Iowa, a private facility, from the time of his civil commitment, with payment for his care provided by Title XIX (Medicaid) funds.

In an attempt to compel the defendants to place him in the institution to which he had been committed, Salcido filed this lawsuit on December 18, 1998, and a motion for preliminary injunction on April 19, 1999. The parties agreed to the entry of a stipulated preliminary injunction on May 17, 1999, under the terms of which Salcido was admitted to the CMHI at state expense. However, under the terms of the preliminary injunction, no party waived any defense or claim to payment for Salcido's care, and the issue of who is responsible for payment of past and future expenses for the care of Salcido was preserved for further consideration in these proceedings.

Consequently, the stipulated preliminary injunction did not dispose of any of the claims in Salcido's lawsuit, or any of the grounds for dismissal of that lawsuit asserted by the state defendants in a motion filed February 11, 1999. In his Complaint, Salcido asserts three kinds of claims. First, in claims brought pursuant to 42 U.S.C. § 1983, Salcido asserts that the defendants have violated his right to equal protection by treating him differently than similarly situated individuals; violated his right to substantive due process by denying his right to adequate treatment; and violated his right to procedural due process by denying him appropriate placement under state law and thereby depriving him of liberty. In a claim pursuant to Title II of the Americans with Disabilities Act (ADA), specifically, 42 U.S.C. § 12133, Salcido asserts that he is a disabled person qualified for care and treatment, but that the defendants have decided to exclude

---

1. At the time the complaint in this action was filed, the Director of the Iowa Department of Human Services was Charles Palmer. However, on August 2, 1999, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the state defendants moved to amend the caption in this matter to substitute the current Director, Jessie K. Rasmussen, who took office on April 5, 1999, as a party defendant. That motion was granted on August 4, 1999.

2. At the time the complaint in this action was filed, the Governor of the State of Iowa was Terry Branstad. However, on August 2, 1999, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the state defendants moved to amend the caption in this matter to substitute the current Governor, Thomas J. Vilsack, who took office on January 15, 1999, as a party defendant. That motion was granted on August 4, 1999.

him from an appropriate placement and have thereby discriminated against him. Finally, in a claim pursuant to the Rehabilitation Act, 29 U.S.C. § 794(a), Salcido asserts that he is a disabled person qualified for care and treatment, but that he has been denied access to the benefits and services provided by the defendants' federally-funded programs for the mentally disabled. Salcido sought declaratory and injunctive relief, damages, costs, and such other relief as the court deemed appropriate.

In their motion to dismiss, which is now before the court, the state defendants first contend that they have immunity under the Eleventh Amendment to a private citizen's claims for damages or equitable relief brought against them in their official capacities. Second, they contend that Salcido has failed to state a claim for violation of his right to equal protection, because under "rational basis" scrutiny, the Iowa laws regarding care of the mentally ill bear a rational relationship to a legitimate governmental goal. Finally, they contend that Salcido's claims pursuant to the ADA and the Rehabilitation Act preclude his claims pursuant to 42 U.S.C. § 1983, because the ADA and the Rehabilitation Act cannot be enforced through § 1983 actions, as both of these federal acts have comprehensive enforcement mechanisms of their own.

In his response, Salcido argues that the state defendants have no Eleventh Amendment immunity to suits for prospective equitable relief, and he specifically eschews any claim for damages from the state defendants he might be construed to have made on the claims brought pursuant to § 1983. Salcido notes that the state defendants have made no other challenge to his substantive and procedural due process claims. As to his equal protection claim, Salcido contends that, some heightened scrutiny may be appropriate, but even under a "rational basis" test, he has adequately stated a claim. Specifically, he contends that the state laws pertaining to care of the mentally ill, which allow for different coverage in each of the ninety-nine counties of the state, hardly seem rational, and that there is no rational basis for any distinction between the treatment of mentally ill persons suffering from dementia and those mentally ill persons suffering from some other mental illness. Finally, he argues that his ADA and RA claims do not preclude his § 1983 claims, because he is not seeking to enforce the ADA or the RA through an action pursuant to § 1983, but is instead asserting violation of his constitutional rights in his § 1983 claims.

In reply, the state defendants contend primarily that Salcido's suggestions that some heightened level of scrutiny is applicable to his equal protection claims are mistaken, and that under rational basis scrutiny, his equal protection claims cannot be sustained. In an addendum to their motion to dismiss, the state defendants contend that the Eighth Circuit Court of Appeals recently held in an *en banc* decision, *Alsbrook v. City of Maumelle,* 184 F.3d 999 (8th Cir.1999), that the Eleventh Amendment bars suits against state officials under Title II of the ADA, because that title of the ADA is not a proper exercise of congressional power under section 5 of the Fourteenth Amendment, and consequently could not properly abrogate Eleventh Amendment immunity. In a second addendum, the state defendants assert that a still more recent decision, *Bradley v. Arkansas Dep't of Ed.,* 189 F.3d 745 (8th Cir.1999), has the same impact on a claim under § 504 of the RA.

## II. LEGAL ANALYSIS

The court's legal analysis will begin with the state defendants' broad assertion that this court lacks subject matter jurisdiction over any of Salcido's claims as against them, because these defendants are entitled to immunity under the Eleventh Amendment to the United States Constitution. The court will address the state defendants' challenges to the adequacy of Salcido's claims only if it finds that it has

subject matter jurisdiction over those claims.

## A. Eleventh Amendment Immunity

### 1. General principles

The Eleventh Amendment to the United States Constitution provides as follows:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI. The Eleventh Amendment, as interpreted by the Supreme Court, is born of the recognition of the "vital role of the doctrine of sovereign immunity in our federal system":

> A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued. As Justice Marshall well has noted, "because of the problems of federalism inherent in making one sovereign appear against its will in the courts of the other, a restriction upon the exercise of federal judicial power has long been considered to be appropriate in a case such as this." *Employees v. Missouri Dept. of Public Health and Welfare*, 411 U.S. 279, 294, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973) (concurring in result). Accordingly, in deciding this case we must be guided by "[t]he principles of federalism that inform Eleventh Amendment doctrine." *Hutto v. Finney*, 437 U.S. 678, 691, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978).

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99–100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (footnotes omitted; emphasis in the original). Thus, "concern and respect for state sovereignty are implicated whenever a state is involuntarily subjected to an action, regardless of the role it is forced to play in the litigation." *Thomas v. FAG Bearings Corp.*, 50 F.3d 502, 506 (8th Cir.1995).

Indeed, the Supreme Court recently observed that describing the immunity of states from suit as "Eleventh Amendment immunity ... is convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from nor is limited by the terms of the Eleventh Amendment." *Alden v. Maine*, —— U.S. ——, ——, 119 S.Ct. 2240, 2246–47, 144 L.Ed.2d 636 (1999); *accord Bradley v. Arkansas Dep't of Ed.*, 189 F.3d 745, 749 (8th Cir.1999) ("The Amendment's text, however, does not accurately define the bounds of the immunity that the Amendment reflects."). "Rather," the Court continued, "as the Constitution's structure, and its history, and the authoritative interpretations by this Court make clear, the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today (either literally or by virtue of their admission into the Union upon an equal footing with the other States) except as altered by the plan of the Convention or certain constitutional Amendments." *Id.* at ——, 119 S.Ct. at 2246–47.

Adopting the "convenient shorthand," this court notes that "[t]he Eleventh Amendment can bar federal actions by private parties against a state unless it has waived its immunity or Congress has abrogated it in a valid exercise of power under the enforcement clause of the Fourteenth Amendment." *Rose v. U.S. Dep't of Ed.*, 187 F.3d 926, 928 (8th Cir.1999); *accord Bradley*, 189 F.3d at 749 ("Eleventh Amendment immunity generally prevents an unwilling state from being sued in federal court."). The Eighth Circuit Court of Appeals has observed,

> Almost since its enactment, courts have struggled with the boundaries created by this Amendment. These endeavors have resulted in the creation of many legal fictions which control the Eleventh Amendment's interpretation. For example, although the Amendment's terms bar only suits against states by nonresidents, an early case established that the Eleventh Amendment also prohibits

suits against a state by that state's residents. *Hans v. Louisiana,* 134 U.S. 1, 15–16, 10 S.Ct. 504, 507–08, 33 L.Ed. 842 (1890). The Amendment's terms address only federal suits in law and equity, yet it has been construed to also bar certain admiralty suits. *Florida Dep't of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 683 n. 17, 102 S.Ct. 3304, 3313–14 n. 17, 73 L.Ed.2d 1057 (1982). Other cases have interpreted the Eleventh Amendment to prohibit suits against a state by both foreign nations and Indian tribes. *Monaco v. Mississippi,* 292 U.S. 313, 330, 54 S.Ct. 745, 751, 78 L.Ed. 1282 (1934); *Standing Rock Sioux Indian Tribe v. Dorgan,* 505 F.2d 1135, 1141 (8th Cir.1974).

*Thomas,* 50 F.3d at 504–05 (footnote omitted); *accord Alsbrook v. City of Maumelle,* 184 F.3d 999, 1004 (8th Cir.1999) (*en banc* ) ("The Eleventh Amendment grants a state immunity from suits brought in federal court by its own citizens as well as citizens of another state," and Congress has only limited power to abrogate this immunity). Thus, Eleventh Amendment immunity has been construed to apply to suits against a state brought by a citizen of that state. However, Salcido is not suing Iowa, the state of which he is a citizen, but Iowa state officials.

### 2. *Suits against state officials*

As the Supreme Court has also recently explained, "Some suits against state officers are barred by the rule that sovereign immunity is not limited to suits which name the State as a party if the suits are, in fact, against the State." *Alden,* —— U.S. at ——, 119 S.Ct. at 2267 (citing *In re Ayers,* 123 U.S. 443, 505–506, 8 S.Ct. 164, 31 L.Ed. 216 (1887) and *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 270, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997)); *Bradley,* 189 F.3d at 749 ("The Amendment's protection also may reach to state officials and state agencies."). The state defendants assert the broad proposition that a suit against state officials is in fact a suit against a State and is barred regardless of whether it seeks damages or injunc-

tive relief, citing *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The court finds that the defendants have misinterpreted *Pennhurst.*

In *Pennhurst,* the Supreme Court stated the following:

When the suit is brought only against state officials, a question arises as to whether that suit is a suit against the State itself. Although prior decisions of this Court have not been entirely consistent on this issue, certain principles are well established. The Eleventh Amendment bars a suit against state officials when "the state is the real, substantial party in interest." *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). *See, e.g., In re Ayers,* 123 U.S. 443, 487–492, 8 S.Ct. 164, 173–176, 31 L.Ed. 216 (1887); *Louisiana v. Jumel,* 107 U.S. 711, 720–723, 727–728, 2 S.Ct. 128, 135–137, 141–142, 27 L.Ed. 448 (1883). Thus, "[t]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." *Hawaii v. Gordon,* 373 U.S. 57, 58, 83 S.Ct. 1052, 1053, 10 L.Ed.2d 191 (1963) (*per curiam* ). And, as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief. *See Cory v. White,* 457 U.S. 85, 91, 102 S.Ct. 2325, 2329, 72 L.Ed.2d 694 (1982).

*Pennhurst State Sch. & Hosp.,* 465 U.S. at 101–02, 104 S.Ct. 900. Thus, *Pennhurst* does not hold that a suit against a state official is *always* a suit against the state, as the state defendants would have it, but that when a suit is brought against a state official, "a question arises as to whether that suit is a suit against the State itself." *Id.* at 101, 104 S.Ct. 900. Furthermore, the rule of *Pennhurst* is not that a suit against state officials *is* in fact a suit against a State and is barred regardless of whether it seeks damages or injunctive relief, as the state defendants assert, but

that "a suit against state officials *that is in fact a suit against a State* is barred regardless of whether it seeks damages or injunctive relief." *Id.* at 101–02, 104 S.Ct. 900.

More importantly, the state defendants have overlooked the exception to this rule, as stated by the Court in *Pennhurst* itself:

> The Court has recognized an important exception to this general rule: *a suit challenging the constitutionality of a state official's action is not one against the State.* This was the holding in *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), in which a federal court enjoined the Attorney General of the State of Minnesota from bringing suit to enforce a state statute that allegedly violated the Fourteenth Amendment. This Court held that the Eleventh Amendment did not prohibit issuance of this injunction. The theory of the case was that an unconstitutional enactment is "void" and therefore does not "impart to [the officer] any immunity from responsibility to the supreme authority of the United States." *Id.,* at 160, 28 S.Ct., at 454. Since the State could not authorize the action, the officer was "stripped of his official or representative character and [was] subjected to the consequences of his official conduct." *Ibid.*

*Id.* at 102, 104 S.Ct. 900 (emphasis added). This court recognizes, as did the Court in *Pennhurst,* that the holding in *Young* has been read narrowly to permit suits challenging the constitutionality of a state official's action only when such suits seek specific, limited relief:

> While the rule permitting suits alleging conduct contrary to "the supreme authority of the United States" has survived, the theory of *Young* has not been provided an expansive interpretation.

Thus, in *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Court emphasized that the Eleventh Amendment bars some forms of injunctive relief against state officials for violation of federal law. *Id.,* at 666–667, 94 S.Ct., at 1357–1358. In particular, *Edelman* held that *when a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct, but not one that awards retroactive monetary relief.* Under the theory of *Young,* such a suit would not be one against the State since the federal-law allegation would strip the state officer of his official authority. Nevertheless, retroactive relief was barred by the Eleventh Amendment.

*Pennhurst,* 465 U.S. at 102–03, 104 S.Ct. 900 (emphasis added). Although the nature of the relief that may be sought against state officials without implicating Eleventh Amendment immunity under *Young* was narrowed to permit only suits for prospective injunctive relief, at the same time, the grounds for suits that escape the Eleventh Amendment bar have been treated more expansively, as the section of *Pennhurst* just quoted indicates, permitting suits for prospective injunctive relief against acts "in violation of federal law," *as well as* acts in violation of "constitutional rights." *Id.*

■ Thus, the Eleventh Amendment does not bar suits that challenge the constitutionality of a state official's action, or that assert the official has acted in violation of federal law, if the suits seek only prospective equitable relief. *Id.; accord Alden,* —— U.S. at ——, 119 S.Ct. at 2267 (the rule that sovereign immunity is not limited to suits that name the state "does not bar certain actions against state officers for injunctive or declaratory relief"); [3]

---

3. Although not pertinent here—because the state defendants have only been sued in their *official* capacities—the Supreme Court also observed in *Alden* that "[e]ven a suit for money damages may be prosecuted against a state officer in his *individual* capacity for unconstitutional or wrongful conduct fairly attribut-

able to the officer himself, so long as the relief is sought not from the state treasury but from the officer personally." *Alden,* —— U.S. at ——, 119 S.Ct. at 2267 (emphasis added) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 237–38, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), and *Ford*

*Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993) ("The doctrine of *Ex parte Young,* which ensures that state officials do not employ the Eleventh Amendment as a means of avoiding compliance with federal law, is regarded as carving out a necessary exception to Eleventh Amendment immunity. *See, e.g., Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985). Moreover, the exception is narrow: It applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, *id.,* at 73, 106 S.Ct., at 428, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought, *Cory v. White,* [457 U.S. 85, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982) ]. Rather than defining the nature of Eleventh Amendment immunity, *Young* and its progeny render the Amendment wholly inapplicable to a certain class of suits. Such suits are deemed to be against officials and not the States or their agencies, which retain their immunity against all suits in federal court."); *Bradley,* 189 F.3d at 754 ("*Ex Parte Young* permits a private party to receive prospective injunctive relief in federal court against a state official, even if the Eleventh Amendment otherwise protects the state and its officials from being sued in federal court."); *Campbell v. Arkansas Dep't of Correction,* 155 F.3d 950, 962 (8th Cir.1998) (state officials "may be sued in their official capacities for prospective, injunctive relief"); *Murphy v. Arkansas,* 127 F.3d 750, 754 (8th Cir.1997) (although § 1983 damage claims against state officials in their official capacities were barred by the Eleventh Amendment, § 1983 equal protection claims seeking equitable relief were not, because "[s]tate officials acting in their official capacities are § 1983 'persons' when sued for prospective relief, and the Eleventh Amendment does not bar such relief"). The ques-

tions here, therefore, are whether the present claims are ones "challenging the constitutionality [or legality under federal law] of a state official's action," and consequently "[are] not one[s] against the State," and whether the claims seek only the limited relief that falls outside Eleventh Amendment immunity, prospective equitable relief. *Pennhurst,* 465 U.S. at 102–03, 104 S.Ct. 900.

### 3. *Immunity here*

■ Taking the second of these questions first, the court notes that in response to the state defendants' motion, Salcido specifically eschewed any claim for damages from the state defendants he might be construed to have made on the claims brought pursuant to § 1983. Rather, he seeks only the sort of limited, prospective equitable relief precluding future violations of his constitutional and federal statutory rights against which the Eleventh Amendment does not provide a bar. *Pennhurst,* 465 U.S. at 102–03, 104 S.Ct. 900. To the extent Salcido seeks damages beyond such prospective equitable relief on his § 1983, ADA, or RA claims, the state defendants are correct that the Eleventh Amendment bars such claims. The more difficult question here is whether the present claims are ones "challenging the constitutionality [or legality under federal law] of a state official's action," and consequently "[are] not one[s] against the State."

#### a. *The ADA and RA claims*

The state defendants assert that *Alsbrook v. City of Maumelle,* 184 F.3d 999 (8th Cir.1999) (*en banc*), establishes an Eleventh Amendment bar to Salcido's ADA claim. In *Alsbrook,* the Eighth Circuit Court of Appeals confronted the question of whether the Eleventh Amendment bars claims under Title II of the ADA brought against a state agency, the Arkansas Commission on Law Enforcement

*Motor Co. v. Department of Treasury of Ind.,* 323 U.S. 459, 462, 65 S.Ct. 347, 89 L.Ed. 389 (1945)).

Standards and Training (ACLEST), and individual ACLEST commissioners. In *Alsbrook*, the court held that Title II of the ADA was not a proper exercise of Congress's power under section 5 of the Fourteenth Amendment. *See Alsbrook*, 184 F.3d at 1009. "Consequently," the court held, "there is no valid abrogation of Arkansas' Eleventh Amendment immunity from private suit in federal court and the district court lacked subject matter jurisdiction over the ADA claim." *Id.*

This holding, however, does not answer the question of Eleventh Amendment immunity in this case, because in *Alsbrook*, the court never reached the question of the Eleventh Amendment immunity of individual state officials, ACLEST commissioners, sued in their official capacities. The court in *Alsbrook* recognized the general rule that a suit against the individual commissioners in their official capacities "is no different from a suit against the state itself," and hence subject to Eleventh Amendment immunity. *Id.* at 1009–10. The court also noted that "[t]he exception to this rule is that a state official may be sued in his or her official capacity for injunctive relief." *Id.* 184 F.3d at 1016 n. 19. However, the court found that the "only form of relief available to Alsbrook at this point would be money damages." *Id.*[4] Thus, the court never addressed in *Alsbrook* the question of whether the plaintiff could assert, over Eleventh Amendment objections, a claim for prospective equitable relief under Title II of the ADA against state officials in their officials capacities, which is the only claim for relief asserted here.

■ The answer to the pertinent question, however, can be found in another recent decision of the Eighth Circuit Court of Appeals concerning Eleventh Amendment immunity to a claim under the RA. Not long after the *en banc* decision in *Alsbrook*, a panel of the Eighth Circuit Court of Appeals was called upon to consider whether the Eleventh Amendment barred claims under the Individuals with Disabilities Education Act (IDEA) and § 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), against a state agency and an individual state officer in *Bradley v. Arkansas Dep't of Ed.*, 189 F.3d 745 (8th Cir.1999). The court found that "*Alsbrook* compels us to conclude the § 504 reaches beyond the scope of Congress's § 5 power ... because the ADA and § 504 provide essentially the same protections for the same group of individuals, people with disabilities." *Bradley*, 189 F.3d at 749 (noting that "[t]he only difference between the ADA and § 504 is § 504's application only to recipients of federal funds"). The court then concluded as follows:

This Court determined in *Alsbrook* that the ADA employment provisions were not an appropriate exercise of Congress's § 5 power because the ADA imposes duties upon the states exceeding those commanded by the Fourteenth Amendment. Applying the reasoning of *Alsbrook*, we conclude that § 504 does not abrogate the states' Eleventh Amendment Immunity.

*Bradley*, 189 F.3d at 756. Thus, just as a state has Eleventh Amendment immunity to a private citizen's claim under Title II of the ADA, it also has Eleventh Amendment immunity to a claim under § 504 of the RA; but again, this holding does not address the availability of a suit against a state official for prospective equitable relief from violations of the RA.

An important difference for present purposes between *Bradley* and *Alsbrook* is

---

4. In *Alsbrook,* the court found that it was unclear whether the plaintiff was asserting an individual capacity claim, but the court concluded that, to the extent he was asserting such a claim, the individual commissioners could not be sued. *Alsbrook,* 184 F.3d at 1005 n. 8. The court noted that "Title II provides disabled individuals redress for discrimination by a 'public entity,' " not by individuals, citing 42 U.S.C. § 12131(1), and it appeared unlikely, in light of decisions rejecting individual liability under Title I of the ADA that individual liability existed under Title II. *See id.* No claims are brought against the state defendants in their individual capacities in this lawsuit, however.

that, in *Bradley*, the court did reach the question of whether the Eleventh Amendment bars a claim against a state official under a federal statute that exceeds congressional authority to abrogate Eleventh Amendment immunity. In *Bradley*, the court concluded that the IDEA also exceeded the scope of Congress's power to abrogate Eleventh Amendment immunity of states and state agencies, applying essentially the same analysis used in *Alsbrook. See Bradley*, 189 F.3d at 752. However, the court continued as follows:

> The Bradleys argue that, even if the ADE could not be sued in federal court, *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), allows them to seek to enjoin ADE officials, including defendant Crowley, from committing violations of federal law. We agree. *Ex parte Young* permits a private party to receive prospective injunctive relief in federal court against a state official, even if the Eleventh Amendment otherwise protects the state and its officials from being sued in federal court. *See Ex parte Young*, 209 U.S. at 155–56, 159, 166–68, 28 S.Ct. 441 (allowing a federal court to ignore a state's Eleventh Amendment immunity and impose prospective injunctive relief on state officials to enjoin a future violation of federal law); *see also Missouri v. Jenkins*, 491 U.S. 274, 279, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989) (stating that a state's Eleventh Amendment immunity does not prevent "an award of attorney's fees ancillary to a grant of prospective relief" pursued under *Ex parte Young* ).

*Bradley*, 189 F.3d at 753–54. Although the court did not reiterate the applicability of this exception to Eleventh Amendment immunity from a suit brought against a state official in his or her official capacity for injunctive relief from violations of § 504 of the RA, this court can find no reason why the result should be different. *Accord Alden*, ―― U.S. at ――, 119 S.Ct. at 2267 (the rule that sovereign immunity is not limited to suits that name the state "does not bar certain actions against state officers for injunctive or declaratory relief");

*Puerto Rico Aqueduct and Sewer Authority*, 506 U.S. at 146, 113 S.Ct. 684 ("The doctrine of *Ex parte Young* ... applies only to prospective relief, [but] render the Amendment wholly inapplicable to a certain class of suits."); *Campbell*, 155 F.3d at 962 (state officials "may be sued in their official capacities for prospective, injunctive relief"); *Murphy*, 127 F.3d at 754 ("[s]tate officials acting in their official capacities are § 1983 'persons' when sued for prospective relief, and the Eleventh Amendment does not bar such relief").

■ Thus, *Bradley* clearly supports the conclusion that this court has subject matter jurisdiction—that is, that Eleventh Amendment immunity provides no bar to subject matter jurisdiction—in this case for Salcido's claims against the state defendants in their official capacities for prospective injunctive relief from violations of the ADA and RA. The portion of the state defendants' motion to dismiss the ADA and RA claims on the ground of Eleventh Amendment immunity will therefore be denied.

### b. The § 1983 claims

■ The state defendants also assert Eleventh Amendment immunity to Salcido's § 1983 claims for violation of his rights to equal protection and due process. The defendants once again assert that these claims against them in their official capacities are the same as claims against the state, and that such claims are barred regardless of the relief sought, citing, *inter alia, Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), *Edelman*, 415 U.S. at 663, 94 S.Ct. 1347, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), and *Pennhurst*, 465 U.S. at 102, 104 S.Ct. 900. However, the state defendants have once again overlooked the *Ex parte Young* exception to Eleventh Amendment immunity: These claims are not barred by Eleventh Amendment immunity, because these claims "challeng[e] the constitutionality of a state

official's action" and hence are "not one[s] against the State." *Pennhurst,* 465 U.S. at 102, 104 S.Ct. 900 (describing this as the rule in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714); *see also id.* at 102–03, 104 S.Ct. 900 ("In particular, *Edelman* held that when a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct, but not one that awards retroactive monetary relief."); *accord Alden,* ——— U.S. at ———, 119 S.Ct. at 2267 (sovereign immunity "does not bar certain actions against state officers for injunctive or declaratory relief"); *Puerto Rico Aqueduct and Sewer Authority,* 506 U.S. at 146, 113 S.Ct. 684 ("The doctrine of *Ex parte Young* ... applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past," and "*Young* and its progeny render the Amendment wholly inapplicable to" this class of cases); *Bradley,* 189 F.3d at 753-54 ("*Ex Parte Young* permits a private party to receive prospective injunctive relief in federal court against a state official, even if the Eleventh Amendment otherwise protects the state and its officials from being sued in federal court."); *Campbell,* 155 F.3d at 962 (state officials "may be sued in their official capacities for prospective, injunctive relief"); *Murphy,* 127 F.3d at 754 ("[s]tate officials acting in their official capacities are § 1983 'persons' when sued for prospective relief, and the Eleventh Amendment does not bar such relief"). Thus, there is no Eleventh Amendment immunity for these defendant state officials with respect to Salcido's § 1983 claims for violation of his constitutional rights to equal protection and due process, and the portion of the state defendants' motion to dismiss asserting such immunity will be denied.

### B. Inadequacy Of Claims

In addition to their claims of immunity, the state defendants also assert that some of Salcido's claims must be dismissed, because they fail to state claims upon which relief can be granted. The state defendants contend that Salcido has failed to state a claim for violation of his right to equal protection, because under "rational basis" scrutiny, the Iowa laws regarding care of the mentally ill bear a rational relationship to a legitimate governmental goal. They also contend that Salcido's claims pursuant to the ADA and the RA preclude his claims pursuant to 42 U.S.C. § 1983, because the ADA and the RA cannot be enforced through § 1983 actions, as both of these federal acts have comprehensive enforcement mechanisms of their own. The court will address these contentions in turn; but first, the court will briefly survey the standards applicable to a motion to dismiss for failure to state a claim upon which relief can be granted.

### 1. Standards for a Rule 12(b)(6) motion

The issue on a motion to dismiss for failure to state a claim pursuant to FED. R.CIV.P. 12(b)(6) is not whether a plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence in support of his or her claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *United States v. Aceto Agric. Chem. Corp.,* 872 F.2d 1373, 1376 (8th Cir.1989). In considering a motion to dismiss under Rule 12(b)(6), the court must assume that all facts alleged in the plaintiff's complaint are true, and must liberally construe those allegations. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Gross v. Weber,* 186 F.3d 1089, 1090 (8th Cir.1999) ("On a motion to dismiss, we review the district court's decision de novo, accepting all the factual allegations of the complaint as true and construing them in the light most favorable to [the non-movant]."); *St. Croix Waterway Ass'n v. Meyer,* 178 F.3d 515, 519 (8th Cir.1999) ("We take the well-pleaded allegations in the complaint as true and view the complaint, and all reasonable inferences arising therefrom, in the light most favorable to the plaintiff."); *Gordon v. Hansen,* 168 F.3d 1109, 1113 (8th Cir.1999) (same); *Midwestern Ma-*

*chinery, Inc. v. Northwest Airlines,* 167 F.3d 439, 441 (8th Cir.1999) (same); *Wisdom v. First Midwest Bank,* 167 F.3d 402, 405 (8th Cir.1999) (same); *Duffy v. Landberg,* 133 F.3d 1120, 1122 (8th Cir.) (same), *cert. denied,* —— U.S. ——, 119 S.Ct. 62, 142 L.Ed.2d 49 (1998); *Doe v. Norwest Bank Minn., N.A.,* 107 F.3d 1297, 1303–04 (8th Cir.1997) (same); *WMX Techs., Inc. v. Gasconade County, Mo.,* 105 F.3d 1195, 1198 (8th Cir.1997) (same); *First Commercial Trust v. Colt's Mfg. Co.,* 77 F.3d 1081, 1083 (8th Cir.1996) (same).

The United States Supreme Court and the Eighth Circuit Court of Appeals have both observed that "a court should grant the motion and dismiss the action 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Handeen v. Lemaire,* 112 F.3d 1339, 1347 (8th Cir. 1997) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)); *accord Conley,* 355 U.S. at 45–46, 78 S.Ct. 99 ("A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief."); *Meyer,* 178 F.3d at 519 ("The question before the district court, and this court on appeal, is whether the plaintiff can prove any set of facts which would entitle the plaintiff to relief" and "[t]he complaint should be dismissed 'only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations,'" quoting *Frey v. City of Herculaneum,* 44 F.3d 667, 671 (8th Cir.1995)); *Gordon,* 168 F.3d at 1113 ("We will not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts that would demonstrate an entitlement to relief."); *Midwestern Machinery, Inc.,* 167 F.3d at 441 (same); *Springdale Educ. Ass'n v. Springdale Sch. Dist.,* 133 F.3d 649, 651 (8th Cir.1998) (same); *Parnes v. Gateway 2000, Inc.,* 122 F.3d 539, 546 (8th Cir.1997) (same); *Doe,* 107 F.3d at 1304 (same); *WMX Techs., Inc.,* 105 F.3d at 1198 (same). The Rule does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations. *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Thus, "[a] motion to dismiss should be granted as a practical matter only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Frey v. City of Herculaneum,* 44 F.3d 667, 671 (8th Cir. 1995) (internal quotation marks and ellipses omitted); *accord Parnes,* 122 F.3d at 546 (also considering whether there is an "insuperable bar to relief" on the claim).

### 2. *Equal protection*

The state defendants assert that there is an "insuperable bar" to Salcido's equal protection claim, the fact that the Iowa laws regarding care of the mentally ill bear a rational relationship to a legitimate governmental goal. Salcido contends that he has adequately alleged that the Iowa laws regarding care of the mentally ill irrationally differentiate among mentally ill persons based on their diagnosis and county of legal settlement. To evaluate the arguments, the court finds that it must first obtain a clearer idea of the nature of Salcido's equal protection claim.

#### a. *Salcido's equal protection claim*

From the Complaint, the nature of Salcido's equal protection claim is somewhat opaque. In paragraph 27, under "Claims for Relief: Section 1983 Claims," Salcido alleges that "[d]efendants have violated Plaintiff's right to equal protection by treating him differently than similarly situated individuals." Complaint, ¶ 27. This "barebones" assertion of an equal protection violation is filled in somewhat by Salcido's specific factual allegation that "[t]he mental health funding system in Iowa, which relies on funding plans from 99 counties and the state, results in treating similarly situated individuals differently based on the residence and legal settlement of the individuals." *Id.* at ¶ 25.

Salcido's brief in resistance to the state defendants' motion to dismiss traces the allegations of the complaint to elucidate his equal protection claim further as follows:

Mr. Salcido is in legal limbo when it comes to funding his civil commitment. His diagnosis of dementia is clearly within the definition of mental illness under Iowa Code Chapter 229. (Comp. ¶ 15). Under Chapter 229, the hospitalization referee is required to make a placement in coordination with the single entry point plan of the county. Iowa Code § 229.13 (1997). However, in this case, Woodbury County does not provide funding for individuals with Mr. Salcido's diagnosis. (Comp.¶ 16). Thus, it was impossible for the hospitalization referee to make a placement in coordination with the single entry point process in Woodbury County. The state bears responsibility for this because the state set up the system that requires county funding and approved Woodbury County's plan which does not pay for a whole class (those with dementia) of individuals who may be civilly committed under Iowa Code Chapter 229. (Comp. ¶ 13, 16). The state, by approving Woodbury County's plan, created a class of individuals with mental illness (those with diagnosed dementia) that is treated differently from others who have been diagnosed with mental illness (e.g. schizophrenia).

Plaintiff also alleges that individuals are treated differently based on their county of residence or legal settlement. (Comp.¶ 25). For example, it appears that, in this case, if Mr. Salcido had not established legal settlement in Woodbury County or in any other Iowa County, he would have been a state case and would have been admitted to Clarinda. Thus, the state irrationally distinguishes between a resident of Woodbury County who has legal settlement in Woodbury County and a resident of Woodbury County who has no legal settlement. Furthermore, if Mr. Salcido had legal settlement in Plymouth County, it is possible that Plymouth County would

have approved placement at Clarinda. As noted above, up to 100 different plans [one for each of the 99 counties and one for the state] could be used to make determinations regarding individuals situated similarly to Mr. Salcido.

Plaintiff's Brief In Support Of Resistance To Motion To Dismiss Of Defendants Palmer And Branstad (Plaintiff's Brief), 11–12.

The court finds that the characterization of Salcido's equal protection claim just quoted accurately reflects the allegations in his complaint, taken as a whole. Thus, it appears that Salcido is asserting a violation of his equal protection rights *vis à vis* three classes of similarly situated persons (*i.e.,* mentally ill persons within the meaning of Iowa Code Ch. 229) based on differential treatment of persons with his diagnosis of dementia or differential treatment of such persons based on their "legal settlement." First, Salcido asserts that he is similarly situated to a class of mentally ill persons with "legal settlement" in Woodbury County, but that members of this class who, like him, have a diagnosis of dementia cannot receive county-funded placement at a state mental health facility, while those members of the class without such a diagnosis can. Second, Salcido claims that he is similarly situated to a class of mentally ill persons resident in Woodbury County with a diagnosis of dementia, but that class members who, like him, have established "legal settlement" in the county cannot receive county- or state-funded placement at a state mental health facility, while those members who have not yet established "legal settlement" in Woodbury County can or may receive such placement, either at state expense, if they have no county of "legal settlement," or at the expense of their county of "legal settlement." Third, Salcido contends that he is similarly situated to a class of mentally ill persons in Iowa diagnosed with dementia, but that persons who, like him, have established "legal settlement" in Woodbury County cannot receive county- or state-

funded placement at a state mental health facility, while those who have established "legal settlement" in a county with a more generous management plan can receive county-funded placement at such a facility, and those who have no county of "legal settlement" can obtain such services at state expense.

### b. Scrutiny

■ Having clarified the nature of Salcido's equal protection claim, the court turns to the legal standards applicable to that claim. The Fourteenth Amendment to the United States Constitution provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST., amend. XIV. To state an equal protection claim, the claimant must establish that he was treated differently from others similarly situated to him. *See Johnson v. City of Minneapolis,* 152 F.3d 859, 862 (8th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1035, 143 L.Ed.2d 43 (1999).

■ The Eighth Circuit Court of Appeals has explained that "[e]qual protection analysis turns on the classification drawn by the statute in question." *Knapp v. Hanson,* 183 F.3d 786, 787 (8th Cir. 1999). More specifically,

Unless a law places a burden on a fundamental right or focuses on a suspect class, it is subject to a rational basis standard of scrutiny. *See Weiler v. Purkett,* 137 F.3d 1047, 1051 (8th Cir. 1998). Suspect classifications includes those such as race, alienage, gender, or national origin. *See City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).... In *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993), the Supreme Court held that "a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." Thus, as long as a plausible reason exists for the classification, the Court's scrutiny must end. *See id.* at 313–14, 508 U.S. 307, 113 S.Ct. 2096, 124 L.Ed.2d 211. Additionally, under a rational basis standard of review, the statute at issue carries with it a "strong presumption of validity." *Id.* at 314, 508 U.S. 307, 113 S.Ct. 2096, 124 L.Ed.2d 211; *see also City of Waterloo v. Selden,* 251 N.W.2d 506, 508 (Iowa 1977).

*Knapp,* 183 F.3d at 787-89; *accord Little Rock Sch. Dist. v. Mauney,* 183 F.3d 816, 827 (8th Cir.1999) ("Unless a claim involves a suspect classification, courts generally assume the validity of legislation due to the deference accorded to legislative judgment."); *United States v. Smith,* 171 F.3d 617, 624 (8th Cir.1999) (on a claim of violation of the equal protection clause of the Fifth Amendment, the court observed that "[i]n applying the rational basis standard, we presume legislation is valid and will sustain it if the classification drawn by the statute is rationally related to a legitimate [governmental] interest," and that the claimant "carries the burden of proving that the distinction is wholly arbitrary and irrational and that it cannot conceivably further a legitimate governmental interest") (internal citations and quotation marks omitted); *Johnson,* 152 F.3d at 862 ("Because no protected class is involved, the legislative decision ... is reviewed only for a rational basis. Where rational basis review is appropriate, the plaintiff/appellant bears the burden of proof, and the statute in question bears a strong presumption of validity."). Although "rational basis" review is deferential, it is not entirely toothless: Even rational basis review places limitations on states by prohibiting arbitrary or irrational classifications or laws motivated by the desire to harm an unpopular group. *See Romer v. Evans,* 517 U.S. 620, 634–35, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996); *Bankers Life & Cas. Co. v. Crenshaw,* 486 U.S. 71, 83, 108 S.Ct. 1645, 100 L.Ed.2d 62 (1988); *Cleburne,* 473 U.S. at 446–47, 105 S.Ct. 3249.

Salcido concedes that, in *Cleburne,* the Supreme Court held that rational basis scrutiny was applicable to a classification based on mental disability. *See Cleburne,* 473 U.S. at 445–46, 105 S.Ct. 3249 (rejecting the eligibility of the aging, the disabled, the mentally ill, and the infirm for heightened scrutiny, stating that "[w]e are reluctant to set out on that course, and we decline to do so"); *see also Alsbrook,* 184 F.3d at 1008 (noting that "[i]n *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985), the Supreme Court held that under the Equal Protection Clause of the Fourteenth Amendment, state classifications on the basis of mental retardation need only satisfy rational basis scrutiny"); *Mauney,* 183 F.3d at 827–29 & n. 10 ("The Supreme Court has defined the Equal Protection Clause to provide the disabled with protection against arbitrary and invidious discrimination," and noting that mental disability is not a "suspect classification").

Salcido argues, however, that the Court's subsequent decision in *Heller v. Doe,* 509 U.S. 312, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993), casts some doubt on the proper level of scrutiny. He argues further that Iowa's "legal settlement" laws, which have a durational requirement, impinge upon the right to travel, thus requiring heightened scrutiny. The state defendants argue that *Heller* casts no doubt on the proper level of scrutiny and that the scrutiny applicable to impingements on the right to travel is not relevant here, because Salcido has not alleged that such a right has been impinged, there is no dispute over his county of legal settlement, and no indication that he moved to Woodbury County from another county or that he intended to move from Woodbury County to another county.

■ This court cannot read *Heller* to require a heightened level of scrutiny. Rather, in *Heller,* the Court observed,

We have applied rational-basis review in previous cases involving the mentally retarded and the mentally ill. *See Cleburne v. Cleburne Living Center, Inc.,*

473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *Schweiker v. Wilson,* [450 U.S. 221, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981) ]. In neither case did we purport to apply a different standard of rational-basis review from that just described.

*Heller,* 509 U.S. at 321, 113 S.Ct. 2637. Nor does the court find that a heightened level of scrutiny for impingement on the right to travel is applicable, because no such right is properly at issue in this litigation. Thus, the laws in question are subject only to "rational basis" scrutiny, and Salcido must consequently show that there is no " 'reasonably conceivable state of facts that could provide a rational basis for the classification.' " *See, e.g., Knapp,* 183 F.3d at 788–89 (quoting *Beach Communications, Inc.,* 508 U.S. at 313, 113 S.Ct. 2096).

The laws in question here provide as follows. Pursuant to Iowa Code § 230.1, "[t]he necessary and legal costs and expenses attending the taking into custody, care, investigation, admission, commitment, and support of a person with mental illness admitted or committed to a state hospital shall be paid … [b]y the county in which such person has a *legal settlement,* or … [b]y the state when such person has no legal settlement in this state, or when such settlement is unknown." Iowa Code § 230.1 (emphasis added). The "county of legal settlement" is defined pursuant to Iowa Code § 252.16 as the county in this state in which a person has "continuously resid[ed] … for a period of one year." Iowa Code § 252.16. A mentally ill person may be committed if a court finds by clear and convincing evidence that the person suffers from a serious mental impairment, and if the evidentiary requirement is met, "the court shall order a respondent whose expenses are payable in whole or in part by a county committed to the care of a hospital or facility designated through *the single entry point process.*" Iowa Code § 229.13 (emphasis added). The "single entry point process," which is defined in Iowa Code

§ 331.440, is a process "established by a county or consortium of counties for the delivery of mental health, mental retardation, and developmental disabilities services which are paid for in whole or in part by county funds." In order to obtain state funding for a share of its expenses for the care of mentally ill persons, the county must obtain approval of its county management plan by the state department of human services. IOWA CODE § 331.439. Thus, in brief, the county of legal settlement must pay the expenses of a person committed to a state mental health facility, payment is made pursuant to a plan detailing the treatment for mentally ill persons for which the county will pay, and that plan must be approved by the state department of health and human services.

 It is readily apparent that allocating the costs of mental health services for a mentally ill person, who has been committed pursuant to Iowa law, to the county of legal settlement is rationally related to at least two of the state's interests: providing mental health services to mentally ill persons in Iowa, and allocating the costs of such services to an *appropriate* county. A county in which the mentally ill person has lived for a year at least rationally has a greater interest than other counties in the care of that person. Thus, there is indeed a " 'reasonably conceivable state of facts that could provide a rational basis for the classification' " of mentally ill persons on the basis of their county of legal settlement. See, e.g., Knapp, 183 F.3d at 788-89 (quoting Beach Communications, Inc., 508 U.S. at 313, 113 S.Ct. 2096). This conclusion demonstrates that there is a rational basis for the classifications distinguishing the members of the second and third classes of similarly situated, mentally ill persons upon which Salcido's equal protection claim relies, the two classes in which some members receive different treatment on the basis of whether or not they have established legal settlement in a particular county. See supra at 1048 (construing the classes of "similarly situated" persons upon which Salcido's equal protection claim is based). Similarly, as to the first class of persons on which Salcido's equal protection claim depends, mentally ill persons with "legal settlement" in Woodbury County, some of whom receive different treatment from the rest on the basis of a diagnosis of dementia, see id., the classifications are rationally related to the county's interest (or state's interest, to the extent the state has approved the county's plan) in providing a reasonable balance between costs of care and persons covered. Consequently, there is also a " 'reasonably conceivable state of facts that could provide a rational basis for the classification' " of mentally ill persons in Woodbury County on the basis of their diagnosis. See, e.g., Knapp, 183 F.3d at 788-89 (quoting Beach Communications, Inc., 508 U.S. at 313, 113 S.Ct. 2096).

Salcido contends, however, that it is inappropriate to dispose of his equal protection claim on a motion to dismiss, before he has had the opportunity to develop the record. The court finds that the decision of the Eighth Circuit Court of Appeals in Knapp forecloses this argument. In Knapp, the court wrote,

Appellants are incorrect in their contention that this issue [whether a rational relationship existed between the state's goal and the statute at issue] cannot be decided on a motion to dismiss. See, e.g., Johnson v. City of Minneapolis, 152 F.3d 859, 862–63 (8th Cir.1998), cert. denied, —— U.S. ——, 119 S.Ct. 1035, 143 L.Ed.2d 43 (1999) (affirming the district court's grant of a motion to dismiss on equal protection claim); Morgan v. City of Florissant, 147 F.3d 772, 774 (8th Cir.1998) (same). When all that must be shown is "any reasonably conceivable state of facts that could provide a rational basis for the classification," it is not necessary to wait for further factual development. Beach Communications, Inc., 508 U.S. at 313, 113 S.Ct. at 2096. Accordingly, we affirm the district court's dismissal of Appellants' equal protection claims.

*Knapp*, 183 F.3d at 789. In so holding, the court in *Knapp* also rejected the appellants' contention that the district court had improperly considered facts outside of the record[5] in finding that a rational reason existed for the statute. *Id.* at 789 n. 5. As the court in *Knapp* explained,

> We find this argument meritless. The government asserted that, based on the language of the statute at issue, it was reasonable to assume that the legislature wanted to promote retention of highway patrol workers when it decided to grant them longevity pay. This statement *no more considers facts outside of the record* than do any of Appellants' assertions. Further, Appellants do not cite any specific statement made in the district court's order that refers to facts outside of the record.

*Id.* Here, this court has also made only reasonable assumptions that are no more based on consideration of facts outside the record than are Salcido's assertions. *Id.* Therefore, dismissal of Salcido's equal protection claims is appropriate, even in the absence of an opportunity for him to develop the record.

### 3. Preclusion of constitutional claims

Finally, the state defendants contend that Salcido's claims pursuant to the ADA and the RA preclude his claims pursuant to 42 U.S.C. § 1983, because the ADA and the RA cannot be enforced through § 1983 actions, when both of these federal acts have comprehensive enforcement mechanisms of their own. The state defendants' challenge to the adequacy of Salcido's § 1983 claims otherwise only went to the adequacy of his equal protection claim, but did not attack the adequacy of his substantive and procedural due process claims. Consequently, the court must consider whether the ADA and RA preclude the remaining constitutional claims.

 The court concludes that the ADA and RA claims have no such effect. Although the state defendants are correct that the *en banc* decision in *Alsbrook* held that § 1983 cannot be used to enforce the ADA and RA, because those statutes include their own comprehensive enforcement procedures, *see Alsbrook*, 184 F.3d at 1009-12, that conclusion is of no moment here. Unlike the plaintiffs in *Alsbrook*, Salcido is not seeking to enforce the ADA or the RA through a § 1983 action. Instead, Salcido's remaining constitutional claims, brought pursuant to § 1983, as pleaded, go to violation of his constitutional rights—his rights to substantive and procedural due process—even though those constitutional claims may arise from essentially the same nucleus of operative facts. *See* Complaint, Count I; *see generally Laird v. Ramirez*, 884 F.Supp. 1265, 1283– 86 (N.D.Iowa 1995) (considering whether

---

5. As this court has explained,

> Where on a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." FED.R.CIV.P. 12(b)(6); *see also Buck v. FDIC*, 75 F.3d 1285, 1288 & n. 3 (8th Cir.1996) (because the district court relied on matters outside the complaint in ruling on a Rule 12(b)(6) motion, "the district court had to treat the [defendant's] motion to dismiss as a motion for summary judgment and apply the relevant standards for summary judgment," and further noting that "[t]he standards for dismissing a complaint under Rule 12(b)(6) are substantially different" from those ap-

plicable to a Rule 56 summary judgment motion; therefore it was inappropriate for the district court to fail to specify whether it was disposing of an issue according to summary judgment or Rule 12(b)(6) standards). Even where matters outside of the pleadings are presented to the court, however, a motion to dismiss is not converted into a motion for summary judgment "where the district court's order makes clear that the judge ruled only on the motion to dismiss." *Skyberg v. United Food and Commercial Workers Int'l Union, AFL—CIO*, 5 F.3d 297, 302 n. 2 (8th Cir.1993). Where the district court has made the posture of its disposition clear, the appellate court will "treat the case as being in that posture." *Id. Dethmers Mfg. Co., Inc. v. Automatic Equip. Co.*, 23 F.Supp.2d 974, 1000 (N.D.Iowa 1998).

constitutional claims pursuant to § 1983 were precluded by statutory claims, and finding that they were not, because, *inter alia,* constitutional and statutory remedies may coexist, where independent constitutional and statutory rights are asserted). Therefore, the state defendants are not entitled to dismissal of Salcido's remaining § 1983 claims on the ground that those claims are precluded by his assertion of ADA and RA claims, because the court finds that the constitutional and statutory claims here go to violations of entirely independent rights.

### III. CONCLUSION

The court has rejected Eleventh Amendment immunity of the state defendants here, asserted as a ground for lack of subject matter jurisdiction. Instead, the present suit against state officials falls squarely within a well-established exception to Eleventh Amendment immunity, in that the suit seeks only prospective equitable or injunctive relief on a claim challenging the constitutionality or lawfulness under federal law of a state official's action. The court finds, however, that Salcido's equal protection claim can and must be dismissed, even at this preliminary stage of proceedings, because the challenged actions of the state officials are rationally related to legitimate governmental interests. Even though Salcido's equal protection claims are not tenable, the court finds that the state defendants are not entitled to dismissal of Salcido's remaining constitutional claims, because those claims are not precluded by entirely independent statutory claims under the ADA and RA.

The state defendants' February 11, 1999, motion to dismiss is therefore **granted** as to Salcido's equal protection claim, but otherwise **denied.**

**IT IS SO ORDERED.**