Robert **BAUMGARDNER**, Plaintiff,

v.

**COUNTY OF COOK and William Krystiniak**, Defendants.

No. 99 C 5788.

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 3, 2000.

Jonathan C. Goldman, Goldman & Ehrlich, Chicago, IL, for Plaintiff.

Katherine A. Paterno, Assistant State's Attorney, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

MORTON DENLOW, United States Magistrate Judge.

This case raises the issue of whether a plaintiff who brings a claim alleging violations of the Americans with Disabilities Act (the "ADA") against his county government employer can also bring a claim alleging violations of the Equal Protection Clause of the Fourteenth Amendment under 42 U.S.C. § 1983 against his supervisor individually when the same facts and circumstances form the basis for both claims. The Court holds that he can. The rights conferred on Americans by the Constitution do not ebb and flow like the tide depending on whether a civil rights lawsuit has been launched. Rather, constitutional rights are those fundamental rights that are the very foundation of American society. They follow us wherever we go, especially into the courtroom and the workplace.

Plaintiff Robert Baumgardner ("Baumgardner" or "Plaintiff") brought a three count complaint against his employer County of Cook ("Cook County") and his supervisor individually, William Krystiniak ("Krystiniak")(collectively "Defendants"). Counts I and II are brought against Cook County alleging (I) discrimination in violation of the ADA, 42 U.S.C. § 12112 and § 12201 and (II) retaliation in violation of the ADA, 42 U.S.C. § 12203. In Count III, Baumgardner also brings a complaint against Krystiniak individually, pursuant to 42 U.S.C. § 1983, alleging a violation of the Equal Protection Clause of the Four-

teenth Amendment of the United States Constitution. The Court has previously denied Defendants' motion to dismiss Counts I, II & III. In the present action, Defendants move this Court to reconsider its previous holding, denying Defendants' motion to dismiss Count III for failure to state a cause of action pursuant to Fed. R.Civ.P.12(b)(6). For reasons set forth below, Defendants' motion for reconsideration is denied.

## I. STANDARD FOR MOTION TO DISMISS UNDER 12(b)(6)

On a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6), the issue is not whether a plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence in support of his or her claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). In considering a motion to dismiss, the court must assume that all facts alleged in the plaintiff's complaint are true, and must liberally construe those allegations. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

"A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. at 102. A court should dismiss the action under 12(b)(6) "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). The Rule does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations. *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989).

## II. STATUTE AT ISSUE

42 U.S.C. § 1983 does not confer substantive rights; it provides a remedy, that is, a private cause of action, for violations of constitutional rights and rights created

by federal statute. 42 U.S.C. § 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

 Thus, in order to establish a prima facie case under 42 U.S.C. § 1983, a plaintiff must allege two elements: 1) the action occurred "under color of law" and 2) the action is a deprivation of either a constitutional right or a federal statutory right. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Section 1983 is available to enforce violations of the Constitution and federal statutes by agents of the state. *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). However, when the alleged violation is statutory, as opposed to Constitutional, in nature, the Supreme Court recognizes "two exceptions to the application of a § 1983 claim to remedy statutory violations: 1) where Congress has foreclosed such enforcement of the statute in the enactment itself, and 2) where the statute did not create enforceable rights, privileges, or immunities within the meaning of § 1983." *Wright v. Roanoke Redevelopment and Housing Auth.,* 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987). In exceptional cases, the Court has held that when a statutory scheme is "unusually elaborate" and "sufficiently comprehensive," it demonstrates Congress' intent to foreclose a plaintiff from bringing a statutory claim under § 1983. *Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 13 & 20, 101 S.Ct. 2615, 2623 & 2626, 69 L.Ed.2d 435 (1981).

Contrary to Defendants' assertions, these exceptions apply only to statutory violations brought under § 1983. In the case at bar, Plaintiff does not attempt to bring an ADA claim under § 1983, but rather a constitutional claim. Thus, the statutory exceptions do not apply to this case.

## III. ISSUES PRESENTED

Thus, the issues presented are (1) whether this is one of those exceptional cases in which Congress intended to foreclose such private enforcement under § 1983, either in the text of the ADA statute or by providing a sufficiently comprehensive and effective remedial scheme under the ADA, so as to raise a clear intention of foreclosure, and (2) if Congress did not intend foreclosure, whether a § 1983 claim under the Equal Protection Clause of the Fourteenth Amendment has been sufficiently pled so that, under some set of facts consistent with his claim, Plaintiff would be entitled to relief.

The parties have agreed that the issue of qualified immunity from a § 1983 claim is an issue that is best decided after discovery. Therefore, the Court declines to address the issue of Krystiniak's qualified immunity at this time.

## IV. CONGRESS DID NOT INTEND THE ADA TO FORECLOSE SEPARATE § 1983 CLAIMS BROUGHT FOR CONSTITUTIONAL VIOLATIONS

### A. Language of ADA and Legislative History

 As always, the legal analysis begins with the language of the statute. Based on the express language of the statute and the subsequent judicial interpretations thereof, Congress did not intend for the ADA to foreclose private claims alleging constitutional violations brought under 42 U.S.C. § 1983.

Congress clearly stated its purpose in enacting the ADA:

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities; (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b).

To achieve these goals, the ADA includes provisions in five separate areas to protect the rights of the disabled: Title I—Employment, Title II—Public Services, Title III—Public Accommodations and Services Operated by Private Entities, Title IV–Telecommunications, and Title V—Miscellaneous Provisions. Plaintiff has alleged violations of Title I regarding employment discrimination, and Title V regarding retaliation. Thus, the Court will focus on those two titles in its analysis.

### 1. Congress Intended The ADA to Incorporate Many of the Rights, Powers, Procedures, and Remedies of Title VII of The Civil Rights Act of 1964.

Throughout Title I, the ADA incorporates by reference many of the definitions, powers, procedures, and remedies set forth in specified sections of Title VII of the Civil Rights Act of 1964. The definitions of "Commission" and "Person," used in the context of an "Employer," refer to Title VII. 42 U.S.C. § 12111. Posting notices must be done in the manner prescribed by Title VII. 42 U.S.C. § 12115. And the powers, remedies, and procedures provided by the ADA are those provided for by Title VII. 42 U.S.C. § 12117. In addition, the remedies and procedures for retaliation violations under Title V of the ADA are the same as those provided for in Title VII. 42 U.S.C. § 12203(c).

The legislative history of the ADA also indicates that Congress intended the ADA to follow Title VII in many respects. Many members of Congress directly compared the ADA to Title VII. "The ADA provides many of the same rights to individuals with disabilities that have been available to others because of their race, national origin, sex, and age through earlier civil rights laws." 136 CONG.REC. 10858 (1990)(statement of Rep. Bartlett) reprinted in LEGISLATIVE HISTORY OF PUBLIC LAW 101–336 THE AMERICANS WITH DISABILITIES ACT at 621 (Comm.Print.1991). The chairman of the Subcommittee on Civil and Constitutional Rights of the Committee of the Judiciary remarked, "The employment protections use the same enforcement procedures and provide the same remedies as title VII of the Civil Rights Act of 1964, which prohibits employment discrimination based on race, color, religion, sex, and national origin. Under the ADA, persons with disabilities will have the same rights and remedies as minorities and women...." 136 CONG. REC. H2421–02, H2439 (daily ed. May 17, 1990)(statement of Rep. Edwards) reprinted in LEGISLATIVE HISTORY OF PUBLIC LAW 101–336 THE AMERICANS WITH DISABILITIES ACT at 624 (Comm. Print.1991).

Committee reports clearly indicate Congress' intent to parallel the powers, remedies, and procedures developed by case law under Title VII. The Committee on the Judiciary submitted the following:

The Committee intends that the powers, remedies and procedures available to persons discriminated against based on disability shall be the same as, and parallel to, the powers, remedies and procedures available to persons discriminated against based on race, color, religion, sex or national origin. Thus, if the powers, remedies and procedures change in

Title VII of the 1964 Act, they will change identically under the ADA for persons with disabilities.

... [T]he purpose of the ADA [is] to provide civil rights protections for persons with disabilities that are parallel to those available to minorities and women. By retaining the cross-reference to title VII, the Committee's intent is that the remedies of title VII, currently and as amended in the future, will be applicable to persons with disabilities.

H.R.Rep. No. 101–485 pt. 3 at 48, (1990) *reprinted in* Legislative History Of Public Law 101–336 The Americans With Disabilities Act at 488 (Comm.Print.1991).

In addition to this clear mandate, when deciding whether to include a specific provision to protect individuals "about to be subjected to discrimination" in Title I of the ADA, the Committee on Education and Labor made reference to case law and the "futile gesture" doctrine that had been developed under Title VII as support for their decision not to include the provision. "This provision has been deleted because the Committee determined that the case law under title VII of the Civil Rights Act of 1964 already provides protection against discrimination in those circumstances with which the Committee had concerns, and thus, a specific provision in this title was unnecessary.... The Committee intends for [the futile gesture doctrine developed under Title VII] to apply to this title [of the ADA]." H.R. Rep. No. 101–485 pt. 2 at 82 (1990) *reprinted in* Legislative History Of Public Law 101–336 The Americans With Disabilities Act at 355 (Comm.Print. 1991). By this reference to Title VII case law, Congress demonstrated its intent that the ADA should follow case law developed under Title VII as to powers, remedies and procedures available to a plaintiff.

Moreover, as the procedures and remedies for Title VII are developed through court interpretations of legislation, the procedures and remedies of the ADA will also change accordingly. Lex K. Larson, Employment Discrimination § 151.05[3]

(2d ed.2000). Because of the many similarities between the two statues, case law and regulations developed under Title VII provide guidance in cases arising under the ADA. *Id.* The case law developed addressing the issue of whether remedies pursuant to a Section 1983 action may be pled along with a Title VII cause of action is persuasive in this case.

2. **Statutory Language and Legislative History Indicate That Congress Intended The ADA To Supplement, Not Replace, Other Causes Of Action**

Congress demonstrated its clear intent in the express language of the ADA by specifically providing that the statute is not the exclusive remedy for protection against the disabled:

Nothing in this chapter shall be construed to invalidate or limit the remedies, rights, and procedures of any Federal law or law of any State or political subdivision of any State of jurisdiction that provides greater or equal protection for the rights of individuals with disabilities than are afforded in this chapter.

42 U.S.C. § 12201(b).

The legislative history provides additional insight as to Congress' intent to leave intact other remedies, procedures, and rights available to disabled individuals under other state and federal laws. Congressman Hawkins from the Committee on Education and Labor submitted the following statement in his committee's report:

With respect to other laws, section 501(b) of the legislation specifies that nothing in this legislation should be construed to invalidate or limit any other federal law or law of any State or political subdivision of any State or jurisdiction that provides greater or equal protection for the rights of individuals with disabilities that are afforded by this legislation. In other words, all of the rights, remedies and procedures that are available to people with disabilities un-

der other federal laws or other state laws (including state common law) are not preempted by this Act. This approach is consistent with that taken in other civil rights laws. The basic principle underlying this provision is that Congress does not intend to displace any of the rights or remedies available under other federal or state laws (including state common law) which provide greater or equal protection to individuals with disabilities.

H.R.REP. No. 101–485 pt. 2 at 135, (1990) *reprinted in* LEGISLATIVE HISTORY OF PUBLIC LAW 101–336 THE AMERICANS WITH DISABILITIES ACT at 408 (Comm.Print.1991).

Congressman Brooks from the Committee on the Judiciary submitted similar remarks in his report:

Under Section 501(b) of the ADA, all of the rights, remedies and procedures that are available to people with disabilities under other federal laws, including Section 504 of the Rehabilitation Act, or other state laws (including state common law) are not preempted by this Act. This approach is consistent with that taken in other civil rights laws. The basic principle underlying this provision is that Congress does not intend to displace any of the rights or remedies provided by other federal or [sic] laws or other state laws (including state common law) which provide greater or equal protection to individuals with disabilities.

H.R.REP. No. 101–485 pt. 3 at 70, (1990) *reprinted in* LEGISLATIVE HISTORY OF PUBLIC LAW 101–336 THE AMERICANS WITH DISABILITIES ACT at 510 (Comm.Print.1991).

Similar passages were also found in the text of the legislative history of the Civil Rights Act of 1964, one of the "other civil rights laws" referred to in the committee reports of the ADA, with which Congress intended the ADA to parallel. The House Report accompanying The Equal Opportunity Act of 1972 amending Title VII to cover state and local employees stated:

In establishing the applicability of Title VII to State and local employees, the Committee wishes to emphasize that the individual's right to file a civil action in his own behalf, pursuant to the Civil Rights Act of 1870 and 1871, 42 U.S.C. §§ 1981 and 1983, is in no way affected.... Title VII was envisioned as an *independent statutory authority* mean to provide an aggrieved individual with an *additional* remedy to redress employment discrimination.... The bill, therefore, by extending jurisdiction to the State and local government employees does not affect existing rights that such individuals have already been granted by previous legislation.

H.R.REP. No. 92–238 at 18 (1971), *reprinted in* 1972 U.S.C.C.A.N. 2137, 2154 (emphasis added). Thus, in both statutes, Congress intended to supplement, not replace, existing remedies to protected individuals.

Defendants argue that section 501(b) of the ADA, as codified in 42 U.S.C. § 12201(b), applies only to food handlers and that Congress' intent was that federal and state laws regarding food handling safety issues would not be preempted by the ADA. Defendants are mistaken. While it is true that Congress did include a food handlers exception in the ADA, this is found in § 103(d) under available defenses of Title I. 42 U.S.C. § 12113(d). This section was designed to protect against individuals who "pose a direct threat to the health or safety of other[s]" because of an infectious or communicable diseases. 42 U.S.C. § 12113(b). Legislative history clearly states that the food handlers anti-preemption provision under § 103(d) is separate and apart from the general anti-pre-emption provision under § 501(b). The Conference Report explains that § 103(d) is distinguishable from "the general anti-preemption provision of section 501(b) of the Act, [and] is designed specifically with regard to laws regarding food handling.... This provision ... in amplifying Section 501(b) more clearly defines certain types of existing and prospective state and local public health laws that are

not preempted by the ADA." H.R.REP.NO. 101–596, at 63 (1990) *reprinted in* LEGISLATIVE HISTORY OF PUBLIC LAW 101–336 THE AMERICANS WITH DISABILITIES ACT at 68 (Comm.Print.1991).

Thus, Defendants are mistaken in their assertion that the § 501(b) anti-preemption provision applies only to food handlers. Indeed, § 501(b) applies to all federal and state laws, including § 1983 and the Constitution.

## B. Supreme Court Rulings

Case law also supports the Court's holding that the ADA does not preempt other causes of action, specifically § 1983 claims arising from violations of the Constitution and other federal laws. The Supreme Court has recognized only one instance [1] in which the enforcement mechanisms or federal statutes were so comprehensive and elaborate so as to foreclose a § 1983 claim alleging violations of the same federal statute. In *Middlesex County Sewerage Authority v. National Sea Clammers Assoc.,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435, the plaintiff brought a § 1983 cause of action alleging violations of the Federal Water Pollution Control Act and the Marine Protection, Research, and Sanctuaries Act of 1972. The Court held that the Federal Water Pollution Control Act and the Marine Protection, Research, and Sanctuaries Act of 1972 contained such "unusually elaborate enforcement provisions" and "comprehensive enforcement scheme[s]" that Congress intended to foreclose a private cause of action under § 1983 for violations of these statutes. *Sea Clammers,* 453 U.S. at 13, 20, 101 S.Ct. at 2623, 2626. In its reasoning, the Court noted that the statutes at issue conferred authority to sue on both government officials and private citizens. *Id.* The EPA Administrator could enforce the statutes with compliance orders, civil suits, civil penalties, criminal penalties, injunctions, and permit suspensions or revocations. In addition, state officials had authority to enforce the provisions through civil or criminal penalties, or other means of enforcement. The statutes also expressly allowed for private citizens to sue for injunctions to enforce the statutes. *Id.*

The issue the Court addressed was whether the plaintiffs could sue defendants claiming violations of the federal statutes by virtue of a right of action created by § 1983. *Id.,* 453 U.S. at 18, 101 S.Ct. at 2626. The Court did not address the issue of whether a § 1983 claim could be brought alleging constitutional violations, thus, *Sea Clammers* is distinguishable from the case at bar.

In another case arising from a statute protecting the disabled, the Court misinterpreted Congressional intent when it held that the Education of the Handicapped Act ("EHA") foreclosed bringing an action under § 1983 for violation of the Equal Protection Clause of the Fourteenth Amendment. *Smith v. Robinson,* 468 U.S. 992, 1012, 104 S.Ct. 3457, 3469, 82 L.Ed.2d 746 (1984). In *Smith,* the Court concluded, "We have little difficulty concluding that Congress intended the EHA to be the exclusive avenue through which a plaintiff may assert an equal protection claim to a publicly financed special education. The EHA is a comprehensive scheme set up by Congress to aid the States in complying with their constitutional obligations to provide public education for handicapped children. Both the provisions of the statute and its legislative history indicate that Congress intended handicapped children with constitutional claims to a free appropriate public education to pursue those claims through the carefully tailored administrative and judicial mechanism set

---

1. The Court also found a Congressional intent to foreclose a constitutional § 1983 cause of action in *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), which would actually increase this number to two.

However, Congress was quick to point out that the Court was wrong, and that it did not intend to foreclose a § 1983 action under the Education of the Handicapped Act. *See* discussion in text *infra.* at 1047–48.

out in the statute." *Smith v. Robinson,* 468 U.S. at 1009, 104 S.Ct. at 3467.

However, in response to the Court's ruling, Congress acted "swiftly, decisively, and with uncharacteristic clarity to correct what it viewed as judicial misinterpretation of its intent." *Fontenot v. Louisiana Bd. of Elementary and Secondary Educ.,* 805 F.2d 1222, 1223 (5th Cir.1986). First, Congress amended a provision to allow for attorney's fees under the EHA, then it amended the EHA with a provision that clearly rejected the Court's interpretation of the EHA as the exclusive avenue to pursue constitutional claims for a free education to disabled children. *Board. of Educ. v. Diamond,* 808 F.2d 987 (3rd. Cir.1986).

The amendment which provides for other claims to be brought in conjunction with, or instead of, the EHA is substantially similar to a provision Congress used in enacting the ADA. Congress demonstrated its intent by adding the following in pertinent part: "(f) Nothing in this title shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973, or other Federal statutes protecting the rights of the handicapped children and youth." 20 U.S.C. § 1415(f).

In addition, Congress made clear its intent in the House Committee Report stating: "In sum, since 1978, it has been Congress' intent to permit parents or guardians to pursue the rights of handicapped children through EHA, section 504, and section 1983 .... Congressional intent was ignored by the U.S. Supreme Court when, on July 5, 1984, it handed down its decision in *Smith v. Robinson,* [468 U.S. 992,] 104 S.Ct. 3457, 82 L.Ed.2d 746(1984)." H.R.Rep. No. 99–296, at 4 (1985).

The EHA and the ADA share strong similarities in both the language of the provisions allowing claims to be brought under other causes of action, and in the protective nature of the statute, that is, the protection of the rights of disabled individuals. Because of these important similarities, the Court is persuaded that Congress intended the ADA to allow § 1983 claims to be brought alleging Constitutional and other federal statutory violations, just as it intended the EHA to allow § 1983 claims to be brought. It is highly relevant that in the only case in which the Supreme Court concluded that Congress intended to foreclose a remedy for a constitutional violation brought under § 1983, Congress swiftly and unambiguously declared that the Supreme Court had "ignored" their stated intent.

In all other cases, the Supreme Court has held that federal statutes under consideration did not foreclose a § 1983 lawsuit. *See Blessing v. Freestone,* 520 U.S. 329, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997)(holding that Title IV–D of the Social Security Act did not preclude remedy of suits under § 1983); *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990)(holding that Congress did not foreclose private judicial remedy for enforcement of the Medicaid Act under § 1983); *Wright v. Roanoke Redevelopment and Housing Auth.,* 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987)(holding that nothing in the Housing Act or Brooke Amendment foreclosed a private right of action under § 1983 to enforce tenant's rights secured by federal law).

## C. Appellate Court Rulings

### 1. Rulings On The Relationship Between Title VII and § 1983

By specific reference to Title VII, Congress provided that the definitions, remedies and procedures of Title VII would be parallel to those of the ADA. Thus, case law interpreting the relationship between Title VII and § 1983 provides a road map as to the relationship between the ADA and § 1983. Therefore, the Court will first examine case law pursuant to Title VII and other civil rights statutes prior to the enactment of the ADA in 1990. The

Court will then examine those cases interpreting the relationship between the ADA and § 1983.

On at least three occasions, the Seventh Circuit has ruled directly on whether bringing an action under Title VII forecloses bringing a § 1983 suit alleging violation of the Equal Protection Clause of the Fourteenth Amendment In *Trigg v. Fort Wayne Community Schools*, 766 F.2d 299, 302 (7th Cir.1985) the court held that "a plaintiff may sue her state government employer for violations of the Fourteenth Amendment through § 1983 and escape Title VII's comprehensive remedial scheme, even if the same facts would suggest a violation of Title VII." In so holding, the court stated that while "Title VII prohibits employment discrimination based on race or sex, ... [t]he Fourteenth Amendment's Equal Protection Clause prohibits intentional discrimination based on membership in a particular class, ... including acts of employment discrimination." *Id.* at 300. Therefore, in order to bring an action under § 1983, "a plaintiff must cite a deprivation of rights, privileges or immunities secured by the Constitution and laws." *Id.* The Court affirmed that state employees continue to be protected by constitutional rights enjoyed by the rest of the population by stating, "[W]e conclude that the Fourteenth Amendment and Title VII have granted public sector employees *independent* rights to be free of employment discrimination." *Id.* at 302 (emphasis added).

The Seventh Circuit made similar rulings in two other cases. In *Ratliff v. City of Milwaukee*, 795 F.2d 612 (7th Cir.1986), the Seventh Circuit held that a plaintiff may bring both a Title VII claim and a § 1983 claim alleging violations of the Equal Protection Clause of the Fourteenth Amendment, even though the events that gave rise to both causes of action were the same. The appellate court held that the district court improperly dismissed the § 1983 claims and erred as a matter of law in holding that Title VII was plaintiff's

exclusive remedy for employment discrimination. The court reaffirmed that "*both* the Fourteenth Amendment and Title VII grant 'public sector employees *independent* rights to be free of employment discrimination.'" *Id.* at 624 (quoting *Trigg*, 766 F.2d at 302)(emphasis added). The court concluded, "Title VII protects the plaintiff from discrimination, and, because she made specific allegations of constitutional violations, the plaintiff is also protected by the Fourteenth Amendment." *Id.* at 624.

Similarly, in *Alexander v. Chicago Park District*, 773 F.2d 850, 856 (7th Cir.1985) the court held that the plaintiffs' § 1983 claims based on the Fourteenth Amendment's Due Process and Equal Protection Clauses survived a 12(b)(6) motion to dismiss for failure to state a claim, even though plaintiffs had not brought a Title VII claim. The Court concluded, "Title VII is not the sole remedy for employment discrimination claims of state employees. Congress intended to retain preexisting remedies. Only if the right asserted was created by Title VII must it be vindicated through the procedural system set up in that Act." *Id.* at 855.

Although the court allowed a constitutional violation to be brought under § 1983, the court held that violations of statutes containing their own comprehensive remedial scheme must be brought directly under the statute, which contains administrative remedial measures that must be followed before relief can be sought in federal court. Thus, statutory violations could not be brought by way of § 1983, which does not contain a remedial scheme that must be exhausted before bringing a suit in federal court. The court was concerned that the enforcement procedures provided by the statutes would be "bypassed" by allowing plaintiffs to bring a claim directly under § 1983. Thus, the court held that violations of Title VII and Title VI could not be brought under § 1983. *Id.*

The Seventh Circuit is joined by several other circuits reaching the same conclusion that Title VII does not foreclose a § 1983 action alleging constitutional violations for the same wrongful conduct, however violations of Title VII may not be brought under § 1983. The *Alexander* court adopted the reasoning of the Sixth Circuit which held, "Where an employee establishes employer conduct which violates both Title VII and rights derived from another source—the Constitution or a federal statute—which existed at the time of the enactment of Title VII, the claim based on the other source is independent of the Title VII claim, and the plaintiff may seek the remedies provided by § 1983 in addition to those created by Title VII." *Day v. Wayne County Bd. of Auditors,* 749 F.2d 1199, 1205 (6th Cir.1984). The *Alexander* court also relied on the holding of *Whiting v. Jackson State Univ.,* 616 F.2d 116, 121 (5th Cir.1980) in which the Fifth Circuit held "[I]nsofar as [§ 1983 alleging violations of equal protection of the Fourteenth Amendment] is used as a parallel remedy for transgression of ... Title VII rights, the elements of the causes of action do not differ." Similarly, the Fifth Circuit also held that a plaintiff may "elect to bring suit under as many applicable civil rights statutes as the facts of his case permit irrespective of the actual or potential overlap of statutory remedies.... Certainly, the elements of a disparate treatment action ... under Title VII, where intentional discrimination is the claim, are identical to those of § 1983" alleging violations of the Equal Protection Clause of the Fourteenth Amendment. *Nilsen v. City of Moss Point, Miss.,* 701 F.2d 556, 561 (5th Cir.1983).

> Likewise, the Tenth Circuit has held,

> If a plaintiff can show a constitutional violation by someone acting under color of state law, then the plaintiff has a cause of action under Section 1983, regardless of Title VII's concurrent application. Title VII did not impair in any way plaintiff's independent substantive right created by the First and Fourteenth Amendments. 'Substantive rights conferred in the 19th Century were not withdrawn *sub silentio,* by the subsequent passage of the modern statutes.'

*Starrett v. Wadley,* 876 F.2d 808, 814 (10th Cir.1989) (quoting *Great American Fed. Savings & Loan Ass'n v. Novotny,* 442 U.S. 366, 377, 99 S.Ct. 2345, 2351, 60 L.Ed.2d 957 (1979)). However, the court also cautioned, "It is true that a right created solely under Title VII cannot serve as the basis for an independent remedy under Section 1983, lest Congress' prescribed remedies under Title VII be undermined." *Id.* at 813.

The Eighth Circuit held that a plaintiff who successfully sued her city employer under Title VII could later commence a separate action against her supervisors individually and in their official capacity under § 1983 alleging constitutional violations of discrimination similar to those brought under Title VII. *Headley v. Bacon,* 828 F.2d 1272 (8th Cir.1987). Similarly, the Eleventh Circuit concluded "that the Civil Rights Act of 1991 did not render Title VII ... the exclusive remedy for public sector employment discrimination, thereby preempting a constitutional cause of action under § 1983." *Johnson v. City of Fort Lauderdale,* 148 F.3d 1228, 1231 (11th Cir.1998). In so holding, the Eleventh Circuit relied on the reasoning set forth by the Fourth Circuit on the same issue: "It would be perverse to conclude that the Congress that provided additional remedies simultaneously intended silently to extinguish the remedy that § 1983 has provided for many years." *Beardsley v. Webb,* 30 F.3d 524, 527 (4th Cir.1994).

■ Defendants argue that Plaintiff cannot bypass the ADA's remedial scheme by "attempting to attach a § 1983 claim for the sole purpose of keeping Krystiniak as a named defendant." The Court rejects this argument. First, because the § 1983 claim is not alleging a violation of the ADA, the ADA's remedial scheme is

not being bypassed. Plaintiff alleges a separate ADA complaint, which, presumably, will go through the administrative remedies set forth by the ADA. The § 1983 claim alleges a violation of the Equal Protection Clause of the Fourteenth Amendment, and for this, no administrative process is required. Second, Plaintiff is allowed to proceed under as many theories of law as the facts allow, regardless of the overlap of statutory remedies. *Johnson v. Ballard,* 644 F.Supp. at 337 (citing *Nilsen v. City of Moss Point, Miss.,* 701 F.2d at 561).

## 2. Rulings on the Relationship Between ADA and § 1983

Several circuit courts have addressed the issue of whether a plaintiff may bring an ADA claim under § 1983, however, the Court's research did not uncover any circuit court decisions which addressed whether a plaintiff may bring an ADA claim and a separate § 1983 claim alleging constitutional violations. In rulings consistent with those addressing the relationship between Title VII and § 1983, the Eleventh Circuit has held that a plaintiff may not maintain a § 1983 cause of action in lieu of, or in addition to, a Rehabilitation Act or ADA cause of action if the only alleged violation under § 1983 is of rights created by the Rehabilitation Act or the ADA. *Holbrook v. City of Alpharetta, Georgia,* 112 F.3d 1522 (11th Cir.1997). The Eighth Circuit has adopted this reasoning as it pertains to the ADA. *Alsbrook v. City of Maumelle,* 184 F.3d 999 (8th Cir.1999). Similarly, the Fifth Circuit endorsed the Eleventh Circuit's holding as it relates to violations of the Rehabilitation Act brought under § 1983. *Lollar v. Baker,* 196 F.3d 603 (5th Cir.1999).

The *Holbrook* court relied upon case law developed under Title VII as set forth in *Johnson v. Ballard,* 644 F.Supp. 333, (N.D.Ga.1986) and *Day v. Wayne County Bd. of Auditors,* 749 F.2d 1199, in arriving at its ruling. Both of these cases held that state and local employees who allege viola-tions of constitutional rights in the work place may bring an action under § 1983 for constitutional violations independently or in lieu of an action under Title VII. The *Johnson* court reasoned,

> [P]laintiffs allege several violations of their constitutional rights. Although these rights may overlap with plaintiff's Title VII rights, they are not newly created by Title VII. The court notes that in this jurisdiction, courts have allowed plaintiffs to state separate causes of action under both Title VII and § 1983.... [I]n this jurisdiction, like in the Fifth Circuit, a plaintiff may 'elect to bring suit under as many applicable civil rights statutes as the fact of his case permit irrespective of the actual or potential overlap of statutory remedies.'

644 F.Supp. at 337 (quoting *Nilsen,* 701 F.2d at 556.)

Based on these rulings, it can be inferred that, should the circuit courts address the issue of whether a § 1983 claim alleging constitutional violations can be brought in addition to or in lieu of an ADA claim, the courts would continue to follow the line of cases interpreting Title VII, thus allowing a constitutional violation to be pled under § 1983.

Defendants argue that Baumgardner cannot bring an ADA claim against Krystiniak individually under § 1983 because the ADA does not provide for individual liability and because the ADA is a comprehensive scheme precluding private enforcement of the statute pursuant to § 1983. Defendants miss the point. The ADA may or may not preclude bringing an action to enforce the ADA pursuant to § 1983, that is an issue that is not before this Court. As a cursory reading of the first paragraph of Baumgardner's Second Amended Complaint reveals, Baumgardner brings a § 1983 action to enforce violations of constitutional rights, not the ADA. As such, the ADA does not preclude bringing a claim under § 1983.

## D. District Court Decisions

There are several district court opinions on point which the Court finds well reasoned and persuasive. The District Court in the Northern District of Illinois addressed a case with facts similar to the one at hand. In *Haltek v. Village of Park Forest*, 1995 WL 461903 (N.D.Ill. July 17, 1995), although the court dismissed a plaintiff's claims arising under the ADA, the Rehabilitation Act of 1973, and Title VII, the court held that three § 1983 claims alleging violations of the Equal Protection of the Fourteenth Amendment survived a 12(b)(6)motion to dismiss even though the same conduct, facts and circumstances were alleged.

In *Holmes v. City of Chicago*, 1995 WL 270231 (N.D.Ill. May 5, 1995) the court held that a plaintiff could not bring a § 1983 claim based on violations of the Rehabilitation Act and Title I of the ADA. The court based its rulings on previous Seventh Circuit rulings pursuant to Title VII which disallowed clients to bring Title VII claims under § 1983, but allowed separate allegations of constitutional violations to be brought under § 1983. *Alexander v. Chicago Park District*, 773 F.2d 850. The court held that "[b]ecause Title I of the ADA provides that the 'powers, remedies and procedures' of Title VII shall apply to claims of discrimination under Title I of the ADA," the Seventh Circuit's holdings as to the relationship between and remedies available under Title VII and § 1983 also applied to cases addressing the relationship between and remedies under Title I of the ADA and § 1983. *Holmes*, 1995 WL 270231 at *5.

In a case with claims similar to the claims at hand, the U.S. District Court for the Northern District of Iowa, held that the ADA did not preclude plaintiff from bringing a § 1983 claim based on violation of constitutional rights. *Salcido ex rel. Gilliland v. Woodbury County, Iowa*, 66 F.Supp.2d 1035, 1053 ( N.D. Ia.1999). In that case, plaintiff brought three claims: a § 1983 claim alleging violation of equal protection, substantive due process, and procedural due process under the Constitution, an ADA claim and a Rehabilitation Act claim. *Id.* at 1038. The defendant then brought a Rule 12(b)(6) motion to dismiss. In a well reasoned opinion, the court stated the following:

> [T]he court must consider whether the ADA and RA preclude the remaining constitutional claims. The court concludes that the ADA and the RA claims have no such effect. Although the state defendants are correct that the *en banc* decision in *Alsbrook* held that § 1983 cannot be used to enforce the ADA and RA, because these statutes include their own comprehensive enforcement measures, that conclusion is of no moment here. Unlike the plaintiffs in *Alsbrook*, Salcido is not seeking to enforce the ADA or the RA through a § 1983 action. Instead, Salcido's remaining constitutional claims, brought pursuant to § 1983, as pleaded, go to violation of his constitutional rights ... even though those constitutional claims may arise from the same common nucleus of operative facts. Therefore, the state defendants are not entitled to dismissal of [plaintiff's] remaining § 1983 claims on the ground that those claims are precluded by his assertion of ADA and RA claims, because the court finds that the constitutional and statutory claims here go to violations of entirely independent rights.

*Id.* at 1052–53.

## E. The Court's Ruling

In the case at hand, Plaintiff brings an action under the ADA and a separate claim alleging a violation of the Equal Protection Clause of the Fourteenth Amendment of the Constitution under § 1983. Based on the plain language of the ADA and its legislative history, it was the intent of Congress to leave available other avenues, including § 1983 claims alleging constitutional violations, to remedy discrimination against individuals with disabilities.

Following Congress' intent to parallel Title VII, this holding follows the line of cases which have interpreted Title VII to allow a separate § 1983 claim alleging constitutional violations arising from the same facts to be brought in addition to Title VII. It is also consistent with Congress' declared intent and quick reaction when it was of the opinion that the *Smith v. Robinson* Court misinterpreted Congressional intent of the EHA by foreclosing a separate constitutional claims brought under § 1983. In an attempt to avoid repeating the same mistake twice, Congress used similar language in enacting the ADA only three years later, demonstrating their intent to preserve rights of disabled individuals to bring separate constitutional claims under both the EHA and the ADA.

In sum, it was not the intent of Congress that individuals must lay down their constitutional rights to equal protection at the door of the courthouse when they file an ADA claim. Therefore, the Court holds that the ADA does not preclude a private action for redress of constitutional violations brought under § 1983.

## V. PLAINTIFF'S § 1983 CLAIM ALLEGING CONSTITUTIONAL VIOLATIONS IS SUFFICIENTLY PLEAD

### A. The Equal Protection Clause Protects Individuals From Invidious Discrimination

■ The Court holds that Plaintiff has sufficiently plead a § 1983 claim alleging a violation of the Equal Protection Clause of the Fourteenth Amendment as provided by the federal courts liberal system of notice pleading. Plaintiff pleads that he was treated differently than non-disabled employees because of his disability, in violation of the Equal Protection Clause. The Equal Protection Clause states: "[No state shall] deny to any person within its jurisdiction the equal protection of the laws." U.S. Constitution, Amendment XIV. The Equal Protection Clause grants to all citizens "the right to be free from invidious discrimination in statutory classi-

fications and other governmental activity." *Harris v. McRae*, 448 U.S. 297, 322, 100 S.Ct. 2671, 2691, 65 L.Ed.2d 784 (1980). The Equal Protection Clause requires, therefore, that all similarly situated persons be treated in a similar manner. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249,- 3253, 87 L.Ed.2d 313. (1985).

■ The core of any equal protection right is protection against intentional discrimination. *Bohen v. City of East Chicago*, 799 F.2d 1180, 1186 (7th Cir.1986). A single act against one individual can be a violation of the Equal Protection Clause. *Id.* Thus, a plaintiff need not prove a discriminatory policy against an entire class; it is sufficient to prove discrimination against the plaintiff because of her membership in a particular class. *Id.* at 1187. In this case, plaintiff is protected by the Equal Protection Clause from intentional discrimination because of his membership in the class of disabled individuals.

Recently, in *Village of Willowbrook v. Olech*, 528 U.S. 1073, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000), a *per curiam* Court held that even if a plaintiff is not a member of a protected class, equal protection claims brought by a "class of one" are valid "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* at 1074. The Court explained that "the purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Id.* at 1075.

### B. Discrimination Because of A Disability is Subject To The Rational Relationship Test

In *City of Cleburne v. Cleburne Living Center*, the Supreme Court held that men-

tally disabled persons, a subset of the disabled, are neither a suspect nor quasi-suspect class and applied the rational relationship test to a claim of discrimination. 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313. Other courts have interpreted this to mean that "[t]he Supreme Court has defined the Equal Protection Clause to provide the disabled with protection against arbitrary and invidious discrimination." *Little Rock School District v. Mauney,* 183 F.3d 816, 827 (8th Cir.1999).

Similarly, the Seventh Circuit held that the disabled fall into neither the suspect nor quasi-suspect class and applied the rational relationship test to determine whether a juror who was excluded from jury duty because of her disability had been denied equal protection. *United States v. Harris,* 197 F.3d 870, 876 (7th Cir.1999).

In addition, the Seventh Circuit has held, "The Fourteenth Amendment's Equal Protection Clause prohibits intentional discrimination based on membership in a particular class" and that it "grant[s] public sector employees independent rights to be free of employment discrimination." *Trigg,* 766 F.2d at 300, 302. The right to be free of intentional discrimination by government officials is available to all citizens through the constitutional principles of equal protection. *Waid v. Merrill Area Public Schools,* 91 F.3d 857, 861(7th Cir.1996).

**C. The Supreme Court Has Used The Rational Relationship Test to Prohibit Discrimination Against Disabled and Homosexual Individuals**

■ However, the analysis does not stop there. Simply because a class of individuals is not part of a suspect or quasi-suspect class does not mean that they are not protected under the Equal Protection Clause. In the absence of a suspect of quasi-suspect class, the state action must still bear a rational relationship to the legitimate state objectives and interest. *Cleburne,* 473 U.S. at 442, 105

S.Ct. at 3255. Under the rational relationship standard, a court presumes that the classification is constitutional and the Plaintiff bears the burden of demonstrating that the classification at issue bears no legitimate purpose.

Although most state actions survive legal analysis because of at least some tenuous rational relationship between the class distinction and the state interest, the rational relationship test is not entirely toothless. The Supreme Court has used the Equal Protection Clause to protect individuals that are in neither the suspect nor quasi-suspect classification from "invidious discrimination" and "irrational prejudice." *Cleburne,* 473 U.S. at 446, 450, 105 S.Ct. at 3258, 3260. Using the rational relationship test, the Supreme Court held unconstitutional as a violation of the Equal Protection Clause a city action that denied a permit to build a home for the mentally disabled while allowing other multiple dwelling facilities such as nursing homes, apartment houses, fraternity or sorority houses, hospitals, and sanitariums. *Cleburne,* 473 U.S. at 448, 105 S.Ct. at 3258. The Court found no rational relationship between the ordinance and the classification of the mentally disabled, finding only that "mere negative attitudes," unsubstantiated "fear" and "irrational prejudice." could be responsible for the city's actions. *Cleburne,* 473 U.S. at 448–450, 105 S.Ct. at 3259–3260.

Similarly in *Romer v. Evans,* 517 U.S. 620, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996) the Court found that an amendment to the Colorado state constitution which prohibited legislative, executive or judicial action at any level of state or local government designed to protect homosexuals violated the equal protection clause because it lacked a rational relationship to legitimate state interests. Although homosexuals are not a protected class, the Court, nonetheless, found that their equal protection rights were denied by the amendment.

## D. Considerations Of A Motion To Dismiss With The Rational Relationship Test

When considering the rational relationship standard in conjunction with the standard for a 12(b)(6) motion to dismiss, a confusing situation is presented. *Haltek,* 1995 WL 461903 at *6. Under the rational relationship test, the state action is presumed to be constitutional if any set of facts reasonably may be conceived to justify its classification. *McGowan v. Maryland,* 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1104–05, 6 L.Ed.2d 393 (1961). However, the standard for a 12(b)(6) motion to dismiss requires the plaintiff to prevail if "relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. at 73, 104 S.Ct. at 2232–33. The Seventh Circuit has addressed this dilemma and provided a specific standard for a motion to dismiss for failure to state a claim in regard to the rational relationship standard. *Wroblewski v. City of Washburn,* 965 F.2d 452, 460 (7th Cir. 1992). In *Wroblewski,* an individual brought suit against the city for refusing to hire him or any member of his family alleging, among other things, a violation of the Equal Protection Clause. Although the plaintiff was not a member of any particular class, he, in effect, argued that he was a "class of one" because he was singled out for animus treatment for no good reason. Because he was not a member of any protected class, the court held that his allegation of discrimination must meet the rational relationship standard. The *Wroblewski* court stated:

> The rational basis standard requires the government to win if any set of facts reasonably may be conceived to justify its classification; the Rule 12(b)(6) standard requires the plaintiff to prevail if relief could be granted under any set of facts that could be proved consistent with the allegations. (citations omitted) The rational basis standard, of course, cannot defeat the plaintiff's benefit of

the broad 12(b)(6) standard. The latter standard is procedural, and simply allows the plaintiff to progress beyond the pleadings and obtain discovery, while the rational basis standard is the substantive burden that the plaintiff will ultimately have to met to·prevail on an equal protection claim.

*Id.* at 460.

The court then set forth the standard under which a motion to dismiss should be evaluated when addressing an equal protection claim subject to the rational relationship test: "To survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications." *Wroblewski,* 965 F.2d at 460.

In a case similar to the present case, the *Haltek* court applied this standard and found that an employee who suffered an on-the-job injury in her employment as a village police officer had pled sufficient facts to withstand a 12(b)(6) motion to dismiss a § 1983 claim alleging violations of the Equal Protection Clause, even though her ADA claim had already been dismissed. *Haltek,* 1995 WL 461903 at *6. Thus, although the *Cleburne* and *Romer* cases addressed government policies regarding entire classifications, as *Olech, Bohen, Harris* and *Haltek* illustrate, the test applies equally to individual actions taken by government officials against individuals who are members of a particular classification. *Olech,* 528 U.S. 1073, 120 S.Ct. 1073, 145 L.Ed.2d 1060; *Bohen,* 799 F.2d 1180; *Harris,* 197 F.3d 870. *Haltek,* 1995 WL 461903.

In the case at hand, Plaintiff has alleged that Krystiniak demoted Plaintiff solely because of his disability. Although the disabled are not a suspect or quasi-suspect class subjecting the state action to heightened scrutiny, the state actions must still bear a rational relationship to a legitimate government interest. The Equal Protection Clause exists to protect people like Baumgardner from "invidious discrimina-

tion" and "irrational prejudice." Therefore, the Court declines to hold that there are no set of facts that Baumgardner can prove that would justify dismissing the claim. While Defendants might ultimately prevail by offering a reasonable basis for their actions, the Court holds that Plaintiff has pled facts sufficient to survive a 12(b)(6) motion to dismiss.

## VI. CONCLUSION

For over two centuries, the Equal Protection Clause has served to protect individuals from invidious discrimination and irrational animosity. The purpose of civil rights laws, including the ADA, is to provide individuals who have been discriminated against remedies in addition to those found under the Equal Protection Clause, not to take away those very rights for which our founding fathers fought so hard to achieve. Rights conferred by the Constitution brought under § 1983 need not be sacrificed on the steps of the courthouse when a disabled individual brings an action under the ADA. For the forgoing reasons, the Court holds that the ADA does not foreclose a § 1983 claim alleging violations of the Constitution when the same set of facts gives rise to both claims. This Court also holds that Plaintiff has plead sufficient facts to survive a 12(b)(6) motion to dismiss. Therefore, **Defendants' Motion for Reconsideration is DENIED.**